**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Eugene Ramsell, et al., | No. CV-24-08161-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Linda Wallace, et al., | |
| Defendants. | |

*Pro se* Plaintiffs Craig Eugene Ramsell and Monnie Ramsell ("Plaintiffs") have filed an "Emergency Motion for Temporary Restraining Order." (Doc. 14). Plaintiffs have also filed an Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2), an Amended Application to Proceed Without Prepaying Fees or Costs (Doc. 18), a Complaint (Doc. 1), and an Amended Complaint (Doc. 10). Upon review, Plaintiffs' Amended Application, signed under penalty of perjury, indicates that they are financially unable to pay the filing fee. (Doc. 18). The Court will grant Plaintiffs' Amended Application (*id.*) and allow them to proceed *in forma pauperis* ("IFP"). For the reasons stated below, the Court dismisses Plaintiffs Amended Complaint and their TRO application.

**I.   Background**

Plaintiffs purport to bring this action under *Norton v. Shelby County*, 118 U.S. 425 (1886), "the First Act of Congress 1 Stat. 23" ("1 Stat. 23"),[1] and Article VI of the United

---

[1] Plaintiffs have attached a copy of Chapter I, Volume 1, Sections 1-5 of the United States Statutes at Large, which was published by the First Session of the First U.S. Congress on

States Constitution and allege that Defendants Linda Wallace and John Napper ("Defendants") have "usurped and unlawfully occupied the office of Superior Court Judge." (Doc. 10 at 1). Plaintiffs state that they have received Defendants oaths of office and that these oaths do not comport with the language of 1 Stat. 23—which violates Article VI of the Constitution. (*Id*. at ¶¶ 5–6).

Plaintiffs further allege that Defendant Wallace conducted an eviction hearing while the matter is on appeal to the Ninth Circuit. (*Id*. at 3). Plaintiffs also allege that Defendant Wallace issued an Eviction Order against them on a day which Plaintiffs were absent due to an emergency medical procedure and that Defendant Wallace has a conflict of interest as she is a Defendant in this case. (*Id*.) Plaintiffs state that, as a result of these illegal acts, they lost their real property at a non-judicial trustee sale. (*Id*. at ¶ 35).

As for Defendant Napper, Plaintiffs allege that he usurped the position of Superior Court Judge and that he conspired with Defendant Wallace to issue a "void" order which held their Notice of Conflict of Interest and Demand for Recusal or Disqualification in abeyance. (*Id*.) Plaintiffs also state that Defendant Napper acted outside his authority by "denying Wallace's own request of recusal." (*Id*. at 3–4).

For relief, Plaintiffs state that they seek a Declaratory Judgment from this Court that Defendants "failed to execute the required First Act of Congress 1 Stat 23 Oath of Office which renders all acts . . . void." (*Id*. at 5). Plaintiffs also seek monetary relief of $15,000,000.00 against Defendant Wallace and $5,000,000.00 against Defendant Napper. (*Id*.)

Plaintiffs seek to enjoin Defendant Wallace and the Yavapai County Superior Court from "unlawful taking [] Plaintiffs' real Property through unlawful eviction" in their TRO petition. (Doc. 14 at 2). Plaintiffs state that a "forcible detainer case" was filed in Arizona state court and that this case was removed to this court: 3:24-CV-08122-PCT-SPL.

---

June 1, 1789. (Doc. 10-1 at 2–3). Section one of this statute provides that "the oath or affirmation required by the sixth article of the Constitution of the United States, shall be administered in the form following, to wit: 'I, A. B. do solemnly swear or affirm (as the case may be) that I will support the Constitution of the United States.' " 1 Stat. 23, 1 Cong. Ch. 1

(Doc. 14 at 14).  This case was remanded to state court and Plaintiffs filed a motion for reconsideration.  (*Id*.)  The motion was denied, and Plaintiffs have appealed this denial to the Ninth Circuit.  (*Id*.)  Plaintiffs state that while this motion was pending before the Ninth Circuit, Defendant Wallace issued an eviction notice against them.  (*Id*. at 15).  Plaintiffs state that this notice "grants immediate possession of premises to AUCTIONS 4 ACTION LLC and orders to issue a Writ of Restitution" against Plaintiffs.  (*Id*.)  Plaintiffs argue that this "void judgment" violates their due process rights.  (*Id*.)  Due to these alleged actions, Plaintiffs seek a TRO under Federal Rule of Civil Procedure 65 and argue that they will "suffer immediate and irreparable harm, should the state court and [Defendant] Wallace be permitted to proceed with the judgment order granting immediate possession of premises of Plaintiffs" and seek to "preserve the status quo."  (*Id*. at 16).

**II.     Legal Standard**

   **A.     IFP Screenings**

When a party has been granted IFP status, the Court must review the complaint to determine whether the action:

(i)     is frivolous or malicious;

(ii)    fails to state a claim on which relief may be granted; or

(iii)   seeks monetary relief against a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915(e)(2)(B).[2]  In conducting this review, "section 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

Federal Rule of Civil Procedure 8(a) requires complaints to make "a short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, 'the

---

[2] "While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, § 1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners." *Long v. Maricopa Cmty. Coll. Dist.*, 2012 WL 588965, at *1 (D. Ariz. Feb. 22, 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints[.]"); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") (citation omitted).  Therefore, section 1915 applies to this non-prisoner IFP Complaint.

defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court is mindful that it must "construe pro se filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

### B.     Temporary Restraining Orders

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020); *Bronco Wine Co. v. U.S. Dept. of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996). The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)

---

[3] "Although the *Iqbal* Court was addressing pleading standards in the context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the initial screening of a complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions." *McLemore v. Dennis Dillon Auto. Grp., Inc.*, 2013 WL 97767, at *2 n.1 (D. Idaho Jan. 8, 2013).

(citation omitted).  Preliminary injunctive relief is an "extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> An *ex parte* TRO may be granted without notice to the adverse party *only* if:
>
> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).  To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the Plaintiff's favor, and (4) that the public interest favors injunctive relief. *Winter*, 555 U.S. at 20.  The movant carries the burden of proof on each element of the test.  *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

**III.   Discussion**

Plaintiffs brings two specific claims for relief in their Amended Complaint: (1) Violation of Article VI of the United States Constitution and the First Act of Congress 1 Stat. 23 resulting in deprivation and violation of their rights (presumably, due process) against Defendant Wallace; and (2) Defendants colluded to impersonate Superior Court judges in violation of *Norton v. Shelby County*, 118 U.S. 425 (1886).  (Doc. 10 at 17, 19). Plaintiffs also allege that Defendants actions have deprived them of their property in violation of their due process rights.  (*Id*. at 12).  The Court will construe Plaintiffs due process allegation as its own claim.  *See Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (courts must "construe pro se filings liberally when evaluating them under *Iqbal*." (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).  Plaintiffs also seek to enjoin the "unlawful taking" of their primary residence.  (Doc. 14 at 2).

The Court will first screen Plaintiffs Amended Complaint under 28 U.S.C. § 1915(e)(2) before moving on to the merits of its TRO petition.  *See Rowell v. Dzurenda*, 2019 WL 5410059 (D. Nev. Sept. 27, 2019), *report and recommendation adopted*, 2019

WL 5395444 (D. Nev. Oct. 22, 2019), *aff'd and remanded*, 828 F. App'x 446 (9th Cir. 2020) (screening a *pro se* plaintiff's complaint under Section 1915 first before addressing his TRO application).

### A.   Screening of Plaintiffs' Amended Complaint

#### 1.   Violation of Article VI and 1 Stat. 23

Plaintiffs first allege that Defendant Wallace has violated Article VI of the United States Constitution and the First Act of Congress 1 Stat. 23 because her oath of office is invalid. (Doc. 10 at 17). Plaintiffs fail to state a claim here.

##### a.   Neither Article VI of the Constitution Nor 1 Stat. 23 Provide for a Private Right of Action

Article VI of the United States Constitution contains three clauses. *See* U.S. CONST. art. VI. Plaintiffs do not allege which clause Defendant Wallace has violated but cite specifically to the Supremacy Clause. (*Id.*) The Supremacy Clause states that "[t]his Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any [t]hing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The last paragraph of Article VI, relevant here, states that "all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution." *Id.* at cl. 3. Article VI does not provide for a private right of action, so, Plaintiffs cannot state a claim under it.

The Supremacy Clause "creates a rule of decision: Courts 'shall' regard the 'Constitution' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 210, 6 L.Ed. 23 (1824)). The Supremacy Clause is not, however, "the source of any federal rights, and certainly does not create a cause of action." *Id.* (internal quotation marks and citations omitted). The clause "is silent regarding who may enforce federal laws in courts, and under what circumstances they may do so." *Id.* Instead, it mandates that courts

follow federal law over state law when they conflict. *See id*. at 326. In sum, the Supremacy Clause does not create a private cause of action so that Plaintiffs can state a claim against Defendant Wallace. *See Armstrong*, 575 U.S. at 326.

Similarly, the Oath or Affirmation Clause, which requires state and federal officials to take oaths of office, does not "create a private cause of action for acting contrary to the Constitution." *Carter v. Inslee*, 2017 WL 6886722, at *5 (W.D. Wash. Dec. 4, 2017), *aff'd*, 773 F. App'x 926 (9th Cir. 2019); *see also Bey v. Terminix Int'l, L.P*., 2018 WL 3552348, at *3 (W.D. Tenn. July 24, 2018) ("None of Article VI's three clauses have been found to create a private right of action."). So, as illustrated, Plaintiff cannot state a claim under Article VI.

Next, 1 Stat. 23 does not provide for a private cause of action either. Plaintiffs assert that Defendant Wallace "usurped" her judgeship and that her oath does not comply with 1 Stat. 23. (Doc. 10 at 2, 8). Section one of 1 Stat. 23 provides that "the oath or affirmation required by the sixth article of the Constitution of the United States, shall be administered in the form following, to wit: 'I, A. B. do solemnly swear or affirm (as the case may be) that I will support the Constitution of the United States.' " 1 Stat. 23, 1 Cong. Ch. 1. This statute does not expressly provide for a private right of action. *Id*.

When a statute does not expressly provide for a private right of action, courts examine four factors: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether Congress explicitly or implicitly indicated an intent to create a private remedy; (3) whether an implied private right of action would be consistent with the statute's underlying purposes; and (4) whether an implied cause of action would be in an area traditionally relegated to state law. *See Cort v. Ash*, 422 U.S. 66, 78 (1975) (internal citations omitted). The Supreme Court has made clear that "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross v. Redington*, 442 U.S. 560, 575 (1979). If Congress did not intend to do so, a court need not consider the other factors. *See Logan v. U.S. Bank NA*, 722 F.3d 1163, 1170-71 (9th Cir. 2013).

Nothing in 1 Stat. 23 demonstrates that Congress intended to create, either expressly or by implication, a private cause of action. *Cort*, 422 U.S. at 78. Since it is apparent that Congress did not intend to create a private cause of action under 1 Stat. 23, the Court need not consider the other factors. *Logan*, 722 F.3d 1163, 1170-71. Furthermore, other district courts within this circuit have found that "[n]either the Constitution nor *statutes* that require state or federal officials to take oaths of office create a private cause of action." *Carter*, 2017 WL 6886722, at *5. This finding encompasses Section one of 1 Stat. 23. So, because 1 Stat. 23 does not provide for a private cause of action, Plaintiffs cannot state a claim for relief under it.

### b. Plaintiffs' Claim that Defendant Wallace's Oath of Office is Invalid Under 1 Stat. 23 is Barred by *Res Judicata*

Furthermore, Plaintiffs' claim that Defendant Wallace's oath of office is invalid has already been addressed by the Yavapai Superior Court, so, the Court finds that this claim is also barred by *res judicata*. The preclusive effect of a former adjudication is generally referred to as "*res judicata.*" *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). *Res judicata* involves two doctrines: claim preclusion and issue preclusion. The Ninth Circuit has distinguished the preclusion doctrines as follows:

> Under claim preclusion, a final judgment on the merits of a claim bars subsequent litigation of that claim. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. The related doctrine of issue preclusion, or collateral estoppel, bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in the prior proceeding.

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985) (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). "When the same claim or issue is litigated in two courts, the second court to reach judgment should give *res judicata* effect to the judgment of the first, regardless of the order in which the two actions were filed." *Id.* (citing *Chicago, R.I. & P. Ry. v. Schendel*, 270 U.S. 611, 615–17 (1926)). In a federal

question case such as this one, "res judicata applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity of privity between parties." *Id*. (citation and internal quotation marks omitted). *Ellis v. Circle K Corp.*, 2019 WL 10351581, at *1 (D. Ariz. Mar. 7, 2019) (*citing ProShipLine Inc. v. Aspen Infrastructures Ltd*., 609 F.3d 960, 968 (9th Cir. 2010)). These elements are present here.

### i. Identity of Claims

To determine whether two suits involve the same claim or cause of action under the first claim preclusion element, courts must consider four criteria: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). The Ninth Circuit has instructed that these considerations are "tools of analysis, not requirements." *Int'l Union of Operating Engineers-Emps. Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429–30 (9th Cir. 1993) (quoting *Derish v. San Mateo–Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983)).

Plaintiffs advanced the same exact claim in the state court as it now attempts to do here: that Defendant Wallace's oath of office fails to comport with 1 Stat. 23. (*Compare* Doc. 1-2 at 6 *with* Doc. 10 at 17). Thus, for purposes of *res judicata*, the Court finds that these two cases involve the same claim or cause of action under the first claim preclusion element. *Mpoyo*, 430 F.3d at 987.

### ii. Final Judgment of the Merits

If a court "determine[s] that the allegations in the complaint do not state a ground for relief, then dismissal of the case [is] on the merits." *Ellis*, 2019 WL 10351581, at *2 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). During the state court proceedings in Yavapai County Superior Court, the state court noted that the Arizona Constitution provides for the appointment of *pro tempore* judges and requires superior court judges to

swear an oath that they will support the U.S. and Arizona Constitutions faithfully and impartially discharge the duties of their office to the best of their ability. (*See* Doc. 1-2 at 5 (citing A.Z. CONST. art. VI, §§ 31, 26)). The state court found that Defendant Wallace properly executed the loyalty oath required by the Arizona Constitution for a judge pro tempore of the Superior Court and is proper under the law. (*Id*. at 6). Based on this, the Court concluded that Plaintiffs' claims lacked merit and dismissed them. (*Id*.) Because the state court found that Plaintiffs' allegations did not state a ground for relief, the dismissal of their claims was an adjudication on the merits. *See Ellis*, 2019 WL 10351581, at *2.

### iii.  Identity of Privity Between Parties

Finally, "as it relates to claim preclusion, privity 'is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' " *Ellis*, 2019 WL 10351581, at *2 (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). The state court case was brought by Plaintiffs and advanced against Defendant Wallace. (Doc. 1-2 at 4). Plaintiffs allege their 1 Stat. 23 claim against Defendant Wallace only here, but allege other claims against Defendant Napper. Because this claim is advanced by the same Plaintiffs against the same Defendant, there is privity between the parties. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) ("[S]everal parties in both actions are identical, and therefore quite obviously in privity.").

### iv.  Conclusion

As demonstrated above, there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity of privity between parties—so, the Court finds Plaintiffs' claim that Defendant Wallace's oath of office is void under 1 Stat. 23 is barred by the doctrine of *res judicata*.

### c.  The *Rooker-Feldman* Doctrine

Finally, even if Plaintiffs could state a claim under Article VI or 1 Stat. 23, their claims would be precluded by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman*

doctrine, federal district courts generally lack jurisdiction to review a final state court decision. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). The reasoning underlying this principle is that the United States Supreme Court is the only federal court with jurisdiction to hear direct appeals from a final state court judgment. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Therefore, if a party is disappointed with a state court judgment, that party may not appeal to federal district court, even if the issue would be otherwise within federal district court jurisdiction based upon a federal question or diversity of citizenship. *Id*. at 1155. The doctrine applies to both final state court judgments and interlocutory orders. *See Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). "The purpose of the doctrine is to protect state judgments from collateral federal attack." *Id*.

In *Exxon Mobil*, the Supreme Court explained that federal district courts are precluded from reviewing "cases brought by [1] state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). *Rooker-Feldman* does not bar jurisdiction where the federal court plaintiff is simply complaining of a "legal injury caused by an adverse party"; it instead bars jurisdiction if the federal plaintiff is complaining of "a legal injury caused by a state court judgment." *Noel*, 341 F.3d at 1163. Thus, "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Exxon Mobil*, 544 U.S. at 292 (rejecting application of *Rooker-Feldman* doctrine when state court action was resolved by jury verdict while related parallel federal court action was ongoing); *see also Noel*, 341 F.3d at 1159 ("The rule that permits simultaneous litigation in state and federal court of overlapping and even identical cases is deeply rooted in our system"). In other words, if the state and federal actions are concurrent, and the federal action was not brought in response to an adverse state court decision, *Rooker-Feldman* does not apply. *See id*.

Here, Plaintiffs essentially asks this Court to invalidate the state court's decision to

evict them, therefore, this is a de facto appeal from a state court decision. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004). Plaintiffs themselves state that they lost at the state court level (Doc. 10 at 3), they complain of injuries caused by this state court decision (*Id.* at 5), this decision was entered before this case was filed (*Id.* at 3) and they ask the Court to review and reject that judgment (*Id.* at 5). So, because Plaintiffs' claims meet the *Exxon Mobil* test, the *Rooker-Feldman* doctrine precludes the Court from reviewing their Article VI or 1 Stat. 23 claims. *See Exxon Mobil Corp.*, 544 U.S. at 291.

Thus, the Court must dismiss Plaintiffs' first claim.

### 2. Collusion to Impersonate a Judge

Plaintiffs next claim asserts that Defendants colluded to impersonate Superior Court judges in violation of *Norton v. Shelby County*, 118 U.S. 425 (1886). A private right of action does not exist under *Norton*, so, the Court will dismiss this claim.

*Norton* arose from a dispute over bonds allegedly issued by the Board of County Commissioners of Shelby County, Tennessee in 1869. *Id.* at 434. The Board issued bonds to pay for a subscription to the Mississippi River Railroad Company. *Id.* at 449. The County argued that the commissioners were not lawful officers of the county, therefore, the bonds were void. *Id.* at 435–36. Before the Supreme Court issued its opinion, the Tennessee Supreme Court held that "the act creating the board [of commissioners] was unconstitutional, that the board was an illegal body, and that, as a necessary consequence, the warrants of the county were invalid." *Id.* at 438. The Supreme Court noted that "[i]t would lead to great confusion and disorder if a state tribunal, adjudged by the state supreme court to be an unauthorized and illegal body, should be held by the federal courts, disregarding the decision of the state court." *Id.* at 440. Because of this, the Supreme Court stated that it "must hold that there was no lawful authority in the board to . . . issue the bonds of which those in suit are a part." *Id.* at 441.

*Norton* does not affirmatively give rise to a federal cause of action, however, like a *Bivens* action. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (holding that Fourth Amendment violations committed by a federal

agent acting under color of their authority gives rise to a cause of action for damages). Thus, Plaintiff cannot state a claim under *Norton v. Shelby County*, 118 U.S. 425 (1886).

Furthermore, this claim is also barred by collateral estoppel (issue preclusion). Collateral estoppel "prevents a party from relitigating issues of fact or law" in order to promote judicial economy. *Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 524 P.3d 1141, 1148 (Ariz. 2023) (internal citations omitted). "As long as a litigant had a full and fair opportunity to litigate the issue, collateral estoppel . . . applies to subsequent civil litigation." *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960 (9th Cir. 2020) (citing *Allen v. McCurry*, 449 U.S. 90, 97–99 (1980)). In determining the collateral estoppel consequences of a state court judgment, federal courts "apply the collateral estoppel doctrine of the state where the judgment was rendered." *Valenzuela v. Union Pac. R.R. Co*., 194 F. Supp. 3d 918, 922 (D. Ariz. 2016) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 81 (1984)). "Arizona courts apply the same issue preclusion test as federal courts." *Quinn v. Cardenas*, 535 P.3d 921, 928 (Ariz. Ct. App. 2023).

Collateral estoppel applies when "(1) the issue at stake is the same in both proceedings; (2) the issue was actually litigated and determined in a valid and final judgment issued by a tribunal with competent jurisdiction; (3) the opposing party had a full and fair opportunity to litigate the issue and actually did so; and (4) the issue was essential to the judgment. *Legacy*, 524 P.3d at 1148 (citing *Chaney Bldg. Co. v. Tucson*, 716 P.2d 28, 30 (1986)); *see also Seyed Mohsen Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026 (D. Ariz. 2021). An issue is "actually litigated" for collateral estoppel purposes when it is "is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined[.]" *Chaney*, 716 P.2d at 30. Furthermore, "[a] 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983). All four of the *Legacy* elements are met here.

First, this same issue was previously raised by Plaintiffs in their state court proceedings. (Doc. 1-2 at 4). Plaintiffs argued that Defendant Wallace failed to execute a proper oath of office, therefore, she is not a properly appointed judge of the Yavapai Superior Court. (*Id*. at 4–5). Here, Plaintiffs allege this same issue, but attempt to assert a claim under *Norton* alongside their 1 stat. 23 claim. (Doc. 10 at 19–21). Thus, the issue at stake is the same in both proceedings. *Legacy*, 524 P.3d at 1148.

Second, the issue was actually litigated and determined in a valid and final judgment issued by a tribunal with competent jurisdiction. [A] final judgment is any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Medley v. State*, 2014 WL 5494921, at *5 (Ariz. Ct. App. Oct. 30, 2014). "[T]o be given preclusive effect, a judgment must be a firm and stable one, the 'last word' of the rendering court—a 'final' judgment as opposed to one that is considered merely tentative in the very action in which it was rendered." *Elia v. Pifer*, 977 P.2d 796, 803 (Ariz. Ct. App. 1998) (internal citations omitted). Above, the Court noted that the issue of an invalid oath of office was addressed by the state court. This issue was raised in Plaintiffs' claim that Defendant Wallace's oath was defective under "federal law." (Doc. 1-2 at 4). The state court concluded that Plaintiffs' claims lacked merit and dismissed them. (*Id*. at 6). The Court finds that this element is established.

Third, the parties had a full and fair opportunity to litigate the issue and actually did so, as the parties briefed and argued the issues and the state court issued a well-reasoned, written order dismissing Plaintiffs' claim. (*Id*.) The Court finds that this element is established.

Fourth, the issue was essential to the judgment. "Whether a ruling is essential must be determined on a case-by-case basis." *Garcia v. Gen. Motors Corp*., 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999). Here, the issue of whether Defendant Wallace's oath was valid was specifically alleged by Plaintiffs in state court, and the state court dismissed this claim in its order on Defendant Wallace's motion to dismiss. (Doc. 1-2 at 5–6). This issue was the basis for the trial court's decision. (*Id*.) Therefore, this element is established.

Thus, collateral estoppel applies to the issue of the validity of Defendant Wallace's oath of office; so, the Court must dismiss Plaintiffs' claim that Defendants colluded to impersonate Superior Court judges in violation of *Norton v. Shelby County*. *See Americana Fabrics*, 754 F.2d at 1529 (stating that collateral estoppel bars relitigation "even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in the prior proceeding.").

### 3. Due Process

Plaintiffs finally allege that Defendants actions have deprived them of their property in violation of their due process rights. (*Id*. at 12).

The Due Process Clause of the Fourteenth Amendment, which makes the Due Process Clause of the Fifth Amendment applicable to the states, provides that no "State [may] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist*., 149 F.3d 971, 984 (9th Cir. 1998) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Thus, the Due Process Clause requires that "persons" deprived of life, liberty or property must be afforded (1) notice, (2) an opportunity to be heard, (3) at a meaningful time and in a meaningful manner. *See id*. Procedural due process does not require that the notice and opportunity to be heard occur before the deprivation—it can "take place through a combination of pre- and post-deprivation procedures." *Buckingham v. Sec'y of U.S. Dep't of Agr*., 603 F.3d 1073, 1082 (9th Cir. 2010) (internal citations omitted). Due process does not "always require an adversarial hearing" or "the opportunity to cross-examine witnesses" either, it is "flexible and calls for such procedural protections as the particular situation demands." *Id*. (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The Fourteenth Amendment has both substantive and procedural dimensions. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). To state a substantive due process claim, a plaintiff must allege "(1) a valid liberty

or property interest, (2) which the government infringed in an arbitrary or irrational manner." *Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1265 (D. Idaho 2022) (citing *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926)). "To prevail on a claim for a procedural due process violation, the party must prove three elements: 1) a protectible liberty or property interest, 2) government deprivation of that interest, and 3) a denial of adequate procedural protections. *Holman v. City of Warrenton*, 242 F. Supp. 2d 791, 803 (D. Or. 2002) (citing *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir.1998)).

Upon review, the Court finds that it must abstain from hearing Plaintiffs' due process claim under the *Rooker-Feldman* doctrine. As stated above, the *Rooker-Feldman* doctrine strips federal courts of jurisdiction to review a final state court decision. *Feldman*, 460 U.S. 462; *Rooker*, 263 U.S. 413. Again, federal district courts are precluded from reviewing "cases brought by [1] state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 291. *Rooker-Feldman* bars jurisdiction if the federal plaintiff is complaining of "a legal injury caused by a state court judgment." *Noel*, 341 F.3d at 1163.

Furthermore, "[i]f issues presented in a federal suit are 'inextricably intertwined' with issues presented in a forbidden *de facto* appeal from a state court decision, *Rooker-Feldman* dictates that those intertwined issues may not be litigated." *Kougasian*, 359 F.3d at 1142. Under the "inextricably intertwined" test, *Rooker-Feldman* bars claims "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (internal quotations and citation omitted); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987).

Here, as the Court found above, Plaintiffs acknowledge that they lost at the state court level (Doc. 10 at 3), they complain of injuries caused by this state court decision (*Id.* at 5), this decision was entered before this case was filed (*id.* at 3) and they ask the Court

to review and reject that judgment. (*Id*. at 5). These facts strip this Court of jurisdiction as Plaintiffs ask it to review a final state court decision. *Exxon Mobil Corp.*, 544 U.S. at 291. Furthermore, the issues Plaintiffs seek to litigate here are inextricably intertwined with the state court's Notice of Eviction and Plaintiffs relief seeks to reverse the state court decision or void its ruling. (*See* Doc. 10 at 5). Thus, *Rooker-Feldman* bars this Court from entertaining Plaintiffs due process claim and the Court must dismiss this claim as well. *Fontana Empire*, 307 F.3d at 992.

### IV. Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture C*o., 806 F.2d 1393, 1401 (9th Cir. 1986). In sum, leave to amend "is properly denied [where] amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, the Court will not grant Plaintiffs leave to amend because their Article VI, 1 Stat. 23 and due process claims are all barred by the *Rooker-Feldman* doctrine and because *Norton v. Shelby County* does not create a private right of action. *See Feldman*, 460 U.S. 462; *Rooker*, 263 U.S. 413; *see also Norton*, 118 U.S. 425. Plaintiffs' claims under Article VI, 1 Stat. 23 and *Norton* are also barred by *res judicata* and collateral estoppel. Thus, any attempted amendment to establish subject matter jurisdiction in this Court would be futile, so, the Court will not allow Plaintiff leave to amend. *Carrico*, 656 F.3d at 1008.

**V.     Conclusion**

For the reasons stated above, Plaintiffs have failed to state a claim under Article VI, 1 Stat. 23, *Norton v. Shelby County* and the due process clause. Any amendment to these claims would also be futile. Thus, Plaintiffs' Amended Complaint is dismissed with prejudice. Because the Court dismisses Plaintiffs' Complaint, it also denies its TRO application as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 18) is **GRANTED**.

**IT IS ALSO ORDERED** that Plaintiffs' Amended Complaint (Doc. 10) is **DISMISSED** with prejudice. The Clerk of the Court is kindly directed to enter judgment dismissing this case with prejudice and close this case.

**IT IS FINALLY ORDERED** that Plaintiffs' Emergency Motion for Temporary Restraining Order (Doc. 14) is **DENIED** as moot.

Dated this 30th day of August, 2024.

Honorable Diane J. Humetewa
United States District Judge